**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 26, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MICHAEL GREEN,

     Plaintiff - Appellant,

v.

LIFE INSURANCE COMPANY OF
NORTH AMERICA,

     Defendant - Appellee.

No. 17-1383
(D.C. No. 1:16-CV-02366-RBJ)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **SEYMOUR**, and **HOLMES**, Circuit Judges.
_____

Michael Green brought this action against Life Insurance Company of North America ("LINA"), alleging that LINA incorrectly denied his claim and his subsequent appeals for long-term disability benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* After reviewing the administrative record, the district court affirmed LINA's denial of benefits. Mr. Green appeals the district court's order, arguing that (1) his pre-existing condition did not cause his long-term disability and that (2) LINA impermissibly rewrote Green's plan to deny him long-

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

term benefits. We examine these arguments after performing our own review of the administrative record, and accordingly affirm.

## I.

Michael Green was a truck driver for McLane Company, Inc. ("McLane"). In December 2014, Mr. Green began experiencing cloudy and foggy vision. Aplt App. at 245. He visited Dr. Kenneth Van Amerongen, who diagnosed Mr. Green with posterior vitreous detachment ("PVD") in his right eye. *Id.* After concluding that Mr. Green had no bleeds or tears in his eye, Dr. Amerongen sent Mr. Green back to work, recommending that he see a retinal specialist if his condition worsened or failed to improve. *Id.*

On February 25, 2015, Mr. Green saw Dr. Justin Kanoff, a retina specialist, who diagnosed Mr. Green with macula-off retinal detachment of the right eye. *Id.* at 916. After three unsuccessful surgeries to correct this condition, Mr. Green suffered permanent vision loss, rendering him unable to work as a truck driver. *Green v. Life Ins. Co. of N. Am.*, No. 16-cv-02366-RBJ, 2017 WL 4337675, at *1 (D. Colo. Oct. 30, 2017).

McLane provides its employees a group disability plan administered by LINA ("the Plan"). Aplt. App. at 12. LINA is both the administrator and "fiduciary for the review of claims for benefits under the Plan." *Id.* at 45. This gave LINA the "authority, in its discretion, to interpret the terms of the Plan, . . . to decide questions of eligibility for coverage or benefits under the Plan; and to make any related findings of fact." *Id.*

The parties agree that Mr. Green would be entitled to LTD benefits for his vision loss if not for the Pre-Existing Condition limitation, which is at issue in this appeal. This limitation states:

> We will not pay for benefits for any period of Disability caused or contributed to by, or resulting from, a Pre-existing Condition. A 'Pre-existing Condition' means any Injury or Sickness for which you incurred expenses, received medical treatment, care or services including diagnostic measures, or took prescribed drugs or medicines within 3 months before your most effective date of insurance.

*Id.* at 22.

After the period for Mr. Green's short-term benefits expired and it became clear that he would be unable to return to work, his claim was transferred to the LTD benefits claim department for evaluation. *Id.* at 177. LINA denied Mr. Green's claim for LTD benefits based on the following:

> You were treated with Dr. Amerogen [sic] . . . on December 4, 2014 reporting cloudy and foggy vision. Dr. Amerogen diagnosed you with PVD (Posterior Ventrous [sic] Detachment).
>
> The information outlined above falls within the pre-existing time frame and is related to your current disability, and therefore your claim has been denied.

*Id.* at 483.

Mr. Green submitted an administrative appeal to LINA. He produced medical documentation from Dr. Kanoff noting that "[w]hile a posterior detachment is certainly a risk factor for developing a retinal detachment, [PVD] was not the ultimate cause of [Mr. Green's] visual loss." *Id.* at 916. On March 3, 2016, LINA denied Mr. Green's appeal, stating:

3

Based on the review of all medical information reviewed, it was determined by [Dr. Sami Kamjoo, LINA-hired independent peer reviewer,] that Mr. Green's visual loss was due to the macula-off retinal detachment which he was diagnosed with on February 25, 2015. The posterior vitreous detachment that he developed on December 4, 2014, was highly likely to have caused a retinal tear and was the initial event that led to a retinal tear which subsequently led to the development of the retinal detachment and vision loss.

*Id.* at 1108.

Mr. Green then requested a second appeal in accordance with his rights under ERISA. He provided LINA with a report authored by Dr. Ronald Wise, who found that PVD "was not the cause of Mr. Green's vision loss in his right eye, but rather [was] an event prior to presumably the retinal tear, which to a reasonable degree of medical probability led to the rhegmatogenous retinal detachment." *Id.* at 1119. Dr. Wise noted that PVD is not "listed as a risk factor for rhegmatogenous retinal detachments in the [American Academy of Ophthalmology] literature reviewed." *Id.* Mr. Green also provided another letter from Dr. Kanoff, who stated that "I read the previous denial letter, and I have to strongly disagree with its conclusions . . . posterior vitreous detachment was not the cause of his vision loss; the retinal detachment was the cause of the patient's vision loss." *Id.* at 1145. The letters notwithstanding, LINA denied Mr. Green's second appeal, holding:

[Dr. George Yanik, LINA-hired independent peer reviewer,] opined the macula-off retinal detachment diagnosed on February 25, 2015 was caused or contributed to by the posterior vitreous detachment diagnosed on December 4, 2014. Retinal detachments frequently begin with a posterior vitreous detachment which allows the vitreous gel to separate from the retina causing a retinal tear. This tear allows vitreous fluid to enter causing an eventual detachment of the retina.

4

*Id.* at 1166. After the district court denied Mr. Green's appeal, he appealed to this court.

II.

On appeal, we review "the plan administrator's decision to deny benefits to a claimant, as opposed to reviewing the district court's ruling." *Foster v. PPG Indus., Inc.*, 693 F.3d 1226, 1231 (10th Cir. 2012) (citation and internal quotation marks omitted). "In reviewing the administrator's actions, we are limited to the administrative record—the materials compiled by the administrator in the course of making his decision." *Id.* (citation and internal quotation marks omitted).

The standard of review for a denial of benefits covered by ERISA is *de novo* unless the plan gives the administrator discretionary authority to determine eligibility. *Eugene S. v. Horizon Blue Cross Blue Shield of New Jersey*, 663 F.3d 1124, 1130 (10th Cir. 2011). "Where the plan gives the administrator discretionary authority, however, we employ a deferential standard of review, asking only whether the denial of benefits was arbitrary and capricious." *Id.* (citation and internal quotation marks omitted). "Under this arbitrary-and-capricious standard, our review is limited to determining whether the interpretation of the plan was reasonable and made in good faith." *Id.* (citation and internal quotation marks omitted).

The parties disagree over how much we should defer to LINA's judgment in light of its dual role capacity as both plan administrator and funder of LTD benefits. Mr. Green argues that LINA's conflict of interest compels close scrutiny of LINA's

5

actions, essentially foregoing the "reasonable and made in good faith" standard. LINA argues that we should give less weight to its conflict of interest.

The Supreme Court has held that the "dual role" of administering and funding a plan "creates a conflict of interest; that a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits; and that the significance of the factor will depend upon the circumstances of the particular case." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008). "[This] conflict of interest affects the outcome at the margin, when we waver between affirmance and reversal." *Hancock v. Metro. Life Ins. Co.*, 590 F.3d 1141, 1155 (10th Cir. 2009). However, the conflict of interest "should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy." *Glenn*, 554 U.S. at 117.

Here, LINA properly dealt with its conflict of interest in its dual capacity role by twice referring Mr. Green's case to independent peer reviewers. In Mr. Green's initial appeal, LINA consulted Dr. Kamjoo, upon whose opinion it was able to state that Mr. Green's PVD "was highly likely to have caused a retinal tear and was the initial event that led to a retinal tear which subsequently led to the development of the retinal detachment and vision loss." Aplt. App. at 1108. When Mr. Green appealed to LINA a second time, LINA consulted Dr. Yanik, another independent peer reviewer, whose analysis was the same. *Id.* at 1142.

Having dealt with its conflict of interest, LINA made a reasonable and good faith determination that Mr. Green had a pre-existing condition (PVD) that caused or substantially contributed to his vision loss. As the district court's well-reasoned opinion points out, LINA relied on five doctors' opinions, two of whom were Mr. Green's own doctors, and all of whom agreed that PVD was a highly probable link to Mr. Green's ultimate vision loss. *See Green,* 2017 WL 4337675, at *5.

Mr. Green argues that the causal relationship between PVD and his vision loss is too tenuous. He points us to *Fought v. Unum Life Ins. Co. of Am.*, 379 F.3d 997, 1003 (10th Cir. 2004), a case in which we held that a pre-existing condition "cannot merely [] be one in a series of factors that contributes to the disabling condition; the disabling condition must be substantially or directly attributable to the pre-existing condition." But PVD was not part of a long chain of ailments that eventually led to Mr. Green's vision loss; it led directly to his seeking further treatment and surgeries. The medical experts all agree that PVD was a cause of Mr. Green's vision loss. Indeed, Mr. Green's only reason for seeking a diagnosis of his PVD was vision difficulties. A condition need not be the ultimate cause of a person's claim for LTD benefits to qualify as a pre-existing condition.

Mr. Green's argument that LINA impermissibly rewrote the Plan is also without merit. The Plan provides that "a 'Pre-existing Condition' means any Injury or Sickness for which you incurred expenses, received medical treatment, care or services *including diagnostic measures*, or took prescribed drugs or medicines within

7

3 months before your most effective date of insurance." Aplt. App. at 22 (emphasis added). Mr. Green contends "nothing in the Record demonstrates that [he] incurred expenses, received medical treatment, or took prescribed drugs" during the Pre-Existing Condition Look-Back Period. *Id*. at 1352. But Mr. Green admits that he visited Dr. Amerongen after experiencing cloudy and foggy vision in December 2014. And Dr. Amerongen referred Mr. Green to a retinal specialist if Mr. Green's condition worsened (which it apparently did).

We turn now to the final requirement of the limitation, that the condition occurred during the look-back period. To qualify as a pre-existing condition according to the Plan, Mr. Green must have received medical treatment for PVD, including "diagnostic measures," within three months before his most effective date under the Plan. *Id*. at 22. The Plan became effective January 1, 2015. *Id*. at 1101. Therefore, the look-back period occurred from October 1 to December 31, 2014. Mr. Green sought treatment for his vision problems on December 4, 2014, and was diagnosed by Dr. Amerongen with PVD. *Id*. at 245. As such, Mr. Green's pre-existing condition occurred during the look-back period, and LINA properly denied Mr. Green's application for LTD benefits.

We AFFIRM.

Entered for the Court


Stephanie K. Seymour
Circuit Judge